1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROSCOE WALKER,

          Plaintiff,

   v.

FORD MOTOR COMPANY,

          Defendant.

Case No.  3:16-cv-06297-WHO

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 15

**INTRODUCTION**

Roscoe Walker ("Walker") alleges that Ford Motor Company ("Ford") breached a California Code of Civil Procedure section 998 settlement agreement reached prior to proceeding to trial in state court in 2011 when it refused to pay in accordance with its offer and repeatedly opposed Walker's attempts to have the trial court enter judgment.  In 2016, five years later, the state trial court entered judgment *nunc pro tunc*, awarding Walker the $850,000 amount originally offered, plus 10% interest totaling $400,000.  I am baffled that it took so long for the state court to enter judgment.  And I am troubled by counsels' inability to resolve their dispute, apparently over a Medicare lien worth a few thousand dollars, after the Section 998 offer was accepted.  Instead, they have wasted hundreds of thousands of dollars in fees and costs battling as a result of their dispute, and appear ready to spend a lot more to fight here.

In this case, Walker sues for breach of the Section 998 settlement agreement.  He seeks to collect the "post-breach" costs and attorneys' fees incurred in preparation for the underlying personal injury lawsuit and damages for emotional distress.  While concluding that Ford should

have performed under the Section 998 settlement agreement is easily plausible, the damages

Walker seeks are not cognizable for breach of contract.  His claim fails as a matter of law.  But

since it is not clear whether he will be able to allege a cause of action to recover those types of

damages, his complaint is DISMISSED WITH LEAVE TO AMEND within 21 days.

## BACKGROUND[1]

On September 4, 2007, Walker filed a lawsuit in state court against Ford for personal

---

[1] This case has an extensive history, and both parties attempted to present their perspective of that history through various Requests for Judicial Notice ("RJN").  Attached to its motion, Ford submitted a request for the court to take notice of the following: (1) Plaintiff's Acceptance of Ford Motor Company's C.C.P. § 998 Offer to Compromise dated August 19, 2011 (Gregory Decl. Ex. A, Dkt. No. 15-2); (2) Excerpts from the March 6, 2012 transcript of proceedings (*Id.* Ex. B, Dkt. No. 15-3); (3) Plaintiff's Motion for Entry of Judgment dated April 11, 2016 and Plaintiff's Supplemental Memorandum dated April 21, 2016 (*Id.* Ex. C, Dkt. No. 15-4); (4) June 14, 2016 Minute Order (*Id.* Ex. D, Dkt. No. 15-5); (5) Plaintiff's Motion for Entry of Judgment *Nunc Pro Tunc* dated July 21, 2016 (*Id.* Ex. E, Dkt. No. 15-6); (6) August 26, 2016 Minute Order (*Id.* Ex. F, Dkt. No. 15-7); (7) Excerpts of the May 18, 2016 transcript of proceedings (*Id.* Ex. G, Dkt. No. 15-8); (8) Excerpts of the August 26, 2016 transcript of proceedings (*Id.* Ex. H, Dkt. No. 15-9); (9) Court Order Regarding Plaintiff's Motion for Entry of Judgment Nunc Pro Tunc filed September 8, 2016 (*Id.* Ex. I, Dkt. No. 15-10); (10) Ford's Motion to Deny Plaintiff Pre-Judgment Interest filed on September 30, 2016 (*Id.* Ex. J, Dkt. No. 15-11); (11) Excerpts from October 26, 2016 transcript of proceedings (*Id.* Ex. K, Dkt. No. 15-12); (12) November 7, 2016 letter from Ford counsel to Plaintiff (*Id.* Ex. L, Dkt. No. 15-13); (13) Plaintiff's Acknowledgement of Satisfaction of Judgment filed on November 14, 2016 (*Id.* Ex. M, Dkt. No. 15-14); (14) Plaintiff's Notice of Appeal filed on November 7, 2016 (*Id.* Ex. N, Dkt. No. 15-15); (15) Ford's Motion to Dismiss Appeal filed on January 12, 2017 (*Id.* Ex. O, Dkt. No. 15-16).  Gregory Decl. and Request for Judicial Notice ¶¶ 2–16 (Dkt. No. 15-1).  And, attached to its opposition, Walker requested judicial notice of the following: (1) Ford's Opposition to Plaintiff's Motion to Enforce Settlement dated January 17, 2012 (Pl.'s RJN Ex. A); (2) Ford's Preliminary Opposition to Petition for Writ of Mandate dated February 17, 2012 (Pl.'s RJN Ex. B); (3) Ford's Opposition to Plaintiff's Ex Parte Application for an Order to Stay Trial Court Proceedings dated February 21, 2012 (Pl.'s RJN Ex. C); (4) Ford's Opposition to Plaintiff's Motion to Amend the Complaint to Allege Settlement and Release dated March 8, 2012 (Pl.'s RJN Ex. D); (5) Ford's Opposition to Petition for Writ of Mandate dated April 5, 2012 (Pl.'s RJN Ex. E); (6) Ford's Answer to Petition for Review dated May 10, 2012 (Pl.'s RJN Ex. F); (7) Ford's Opposition to Plaintiff's Motion for Entry of C.C.P. § 998 Judgment Against Ford After Plaintiff's Compliance with Court-Ordered Condition Precedent dated July 26, 2012 (Pl.'s RJN Ex. G); (8) Ford's Opposition to Motion for Entry of Judgment Pursuant to C.C.P. § 998 dated April 27, 2016 (Pl.'s RJN Ex. H); (9) Ford's Motion to Dismiss Appeal dated January 12, 2017 (Pl.'s RJN Ex. I); (10) Plaintiff Paula B Walker's Acceptance of Ford's C.C.P. § 998 Offer dated August 19, 20111 (Pl.'s RJN Ex. J).  And finally, in support of its Reply, Ford requests judicial notice of Appellant's Notice of Designating Record on Appeal (Ford's RJN ISO Reply Ex. 1, Dkt. No. 20-1).  Neither party objects to the others' requests for judicial notice.  Because all of the documents pertain to proceedings in other courts and are directly relevant to this proceeding, judicial notice is appropriate.  *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)("[Federal courts] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").  All requests are GRANTED.

injuries resulting from an automobile accident.  Compl. ¶ 5 (Dkt. No. 1).  On July 18, 2011, Ford

served a Statutory Offer to Compromise pursuant to Code of Civil Procedure Section 998

("Section 998 settlement agreement").  Compl. ¶ 7.  The compromise stated that Ford:

> [H]ereby offers to allow a judgment of dismissal with prejudice for this action to be entered as to all claims Plaintiff Roscoe Walker has asserted in this action against Defendant FORD MOTOR COMPANY, in consideration for payment by Ford Motor Company of EIGHT HUNDRED FIFTY THOUSAND DOLLARS ($850,000) to Plaintiff Roscoe Walker.  This sum is to be without interest and each party is to bear its own costs and attorneys' fees, as a compromise settlement of a disputed claim.

Compl. ¶ 7; Ex. I (Dkt. No. 15-10  at 6).

Ford also served a Section 998 settlement agreement for $50,000 on Walker's wife, Paula Walker,

for a loss of consortium claim.  Compl. ¶ 7; Pl.'s Response at 6 (Dkt. No. 18).  On August 19,

2011, both Roscoe and Paula Walker filed acceptances of the settlements with the court clerk.

Compl. ¶ 8.  Walker's offer of acceptance stated:

> Plaintiff Roscoe Walker, individually and only as to himself, hereby accepts the offer made by defendant FORD MOTOR COMPANY to have a judgment of dismissal with prejudice entered as to Roscoe Walker's individual claims against only defendant FORD MOTOR COMPANY, in consideration for payment by defendant FORD MOTOR COMPANY as follows: ($850,000.00), to Roscoe Walker, said sum is to be without interest and each party is to bear their own costs, as a compromise settlement of a disputed claim.

*Id.*; Ex. I (Dkt. No. 15-10 at 9).

The court clerk never entered judgment.  Mot. 4 (Dkt. No. 15).  On September 22, 2011,

Ford indicated it would not pay unless Walker agreed to additional terms because he was

identified as a Medicare beneficiary.[2]  Compl. ¶ 9.  On September 27, 2011, Ford sent a check to

---

[2] The parties dispute whether Ford requested additional terms or merely sought to ensure that Plaintiff abide by Medicare's reporting requirements.  *See, e.g.*, 1/23/12 Hr'g Tr. at 11:6–8 ("What we have problems with is their position that they're going to withhold the check until we [Walker], not only we obtain the conditional payment letter, but promise to pay."); *id.* at 13:16–17 ("it's about reporting requirements to Medi-Care under the law.")(Dkt. No. 20-1 at 19, 21).  Transcripts from the state court proceedings indicate that Walker may have received a "few thousand [dollars]" from Medicare.  *See, e.g.*, 1/23/12 Hr'g Tr. (Dkt. No. 20-1 at 18:27).The lawyers in this case should be ashamed of generating such expensive litigation (allegedly spending hundreds of thousands of dollars) over such an easily resolvable matter.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Paula Walker, satisfying the terms of their Section 998 settlement agreement.  Compl. ¶ 10.

2        On January 6, 2012, Walker filed a Motion to Enforce the Settlement.  Compl. ¶ 11.

3    Based on Ford's opposition, the court denied the motion and ordered that Walker provide a

4    Conditional Payment Letter from Medicare.  Compl. ¶ 12.  On February 23, 2012, the court denied

5    Walker's Petition for Writ of Mandate, which requested an Order to enforce the terms of

6    settlement. Compl. ¶ 14.  Unable to enforce the terms of the original 998 offer, Walker served his

7    own Statutory Offer to Compromise for $849,999.99 and agreed to "satisfy any claim by Medicare

8    related to the care and treatment of Roscoe Walker arising out of the accident."  Compl. ¶ 16.

9    Ford rejected the offer.  Compl. ¶ 16.  He also sought to amend his complaint to allege settlement

10   and release, but the court denied his motion.  Compl. ¶ 18.

11       On March 23, 2012, Walker filed another Petition for Writ of Mandate in the Court of

12   Appeal, which was denied on April 9, 2012.  Compl. ¶ 19.  Walker also filed a Motion to Enter

13   Judgment pursuant to the accepted Offer to Compromise, after he had received a letter stating that

14   no Medicare benefits were paid.[3]  Compl. ¶ 20.  The motion was denied.  Compl. ¶ 20.  For four

15   years, Walker continued his attempts to have the settlement enforced, while simultaneously

16   preparing for trial.  Compl. ¶ 21.

17       Trial began on March 21, 2016.  Compl. 22.  During the pre-trial hearings, Walker once

18   again raised the issue of the 2011 Section 998 Settlement Agreement.  Compl. ¶ 22.  This time, the

19   state trial court found that the court clerk erred in not entering judgment pursuant to the Section

20   998 agreement reached on August 19, 2011.  Mot. 5.  On September 2, 2016, the court entered

21   judgment pursuant to the terms of the original Section 998 settlement agreement, and made it *nunc*

22   *pro tunc* to the date of acceptance: August 19, 2011.  Compl. ¶ 23.  Ford paid the $850,000

23   principle judgment and $400,000 in interest, and Walker filed an Acknowledgement of

24   Satisfaction of Judgment in Full on November 14, 2016.  Ex. M; Mot. at 6.  On November 7,

25   Walker filed a Notice of Appeal to the California Court of Appeal, based on the trial court's denial

26   of his motion to amend the complaint to allege breach of the settlement.  Ex. N; Mot. at 6.

27

28   _____

[3] Transcripts from the state court proceedings, however, indicate that Walker may have received a
"few thousand [dollars]" from Medicare.  *See, e.g.*, 1/23/12 Hr'g Tr. (Dkt. No. 20-1 at 18:27).

United States District Court
Northern District of California

1  Walker filed his federal complaint on November 1, 2016, alleging "as a direct and
2  proximate result of defendant Ford's breach of the settlement agreement, plaintiff Roscoe Walker
3  did suffer injury including additional litigation costs of approximately $700,000, as well as
4  reasonable attorney's fees of over $1,000,000, as well as other damages according to proof at
5  trial." Compl. ¶ 34. He also seeks damages for emotional distress. Compl. at 7. On January 27,
6  2017, Ford filed a Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim.
7  Mot. 2.

8  **LEGAL STANDARD**

9  **I.     LACK OF JURISDICTION (RULE 12(b)(1))**

10  A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject
11  matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited
12  jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v.*
13  *Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the
14  federal court bears the burden of establishing that the court has the requisite subject matter
15  jurisdiction to grant the relief requested. *Id.*

16  A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d
17  1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the
18  allegations pleaded in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).
19  The challenger asserts that the allegations in the complaint are insufficient "on their face" to
20  invoke federal jurisdiction. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th
21  Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are
22  true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392
23  F.3d at 362.

24  "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by
25  themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve
26  this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.*
27  (citation omitted). Instead, the court "may review evidence beyond the complaint without
28  converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted).

1  Once the moving party has made a factual challenge by offering affidavits or other evidence to

2  dispute the allegations in the complaint, the party opposing the motion must "present affidavits or

3  any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses

4  subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also*

5  *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

6  **II.      FAILURE TO STATE A CLAIM (RULE 12(B)(6))**

7          Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

8  if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

9  dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

10  face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

11  when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the

12  defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

13  (citation omitted).  There must be "more than a sheer possibility that a defendant has acted

14  unlawfully." *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff

15  must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*,

16  550 U.S. at 555, 570.

17          In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

18  Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

19  plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court

20  is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

21  fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

22  2008).

23          If the court dismisses the complaint, it "should grant leave to amend even if no request to

24  amend the pleading was made, unless it determines that the pleading could not possibly be cured

25  by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In

26  making this determination, the court should consider factors such as "the presence or absence of

27  undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous

28  amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See*

United States District Court
Northern District of California

1  *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

2                                                      **DISCUSSION**

3            Ford moves to dismiss on the basis that Walker's requested relief for attorney's fees, costs,

4  and emotional distress is not valid under California contract law.  Ford also argues that Walker

5  fails to state a claim since the settlement agreement was never breached, and his case should be

6  dismissed because it is duplicative of ongoing state court proceedings.

7  **I.        SUBJECT MATTER JURISDICTION**

8            Ford urges that Walker is unable to satisfy the $75,000 amount in controversy requirement

9  as a matter of law and, therefore, this court lacks subject matter jurisdiction.  Mot. 1.  Walker

10  requests attorney's fees, litigation costs, and emotional distress damages.  Compl. ¶ 34.  Ford does

11  not challenge the amount sought, but argues that these are not legally cognizable damages since

12  California law does not allow this relief under a breach of contract.  Mot. 1.

13          It is true that federal courts are courts of limited jurisdiction and cannot reach the merits of

14  a dispute until it confirms subject matter jurisdiction.  *Steel Co. v. Citizens for a Better Env't*, 523

15  U.S. 83, 94–95 (1998)("The requirement that jurisdiction be established as a threshold matter

16  'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible

17  and without exception.'").  But Ford does not challenge the amount of Walker's damages, just his

18  right to recover those damages as presently pleaded.  Mot. at 8; Pl.'s Response at 8; Reply at 2

19  (Dkt. No. 19).  Its argument depends on the specific cause of action alleged by Walker.  It is

20  possible, drawing all reasonable inferences in favor of Walker, that he has plausibly alleged

21  damages exceeding $75,000 but misnamed his claim for relief.  Under these circumstances, it is

22  appropriate for the court to proceed to a discussion under Federal Rule of Civil Procedure

23  12(b)(6).

24  **II.       FAILURE TO STATE A CLAIM**

25          Walker asserts only one claim—breach of contract.  Compl. at 6.  A breach of contract

26  requires: (1) the existence of a contract, (2) the plaintiff's performance or excuse for

27  nonperformance, (3) the defendant's breach, and (4) resulting damage to the plaintiff.  *Wall St.*

28  *Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008).  Ford provides three

United States District Court
Northern District of California

7

1    reasons why Walker's claim fails: he suffered no "legally-cognizable damage for any purported

2    breach"; the settlement has been fully performed; and there could be no breach because judgment

3    was never entered and that was a condition precedent to Ford relinquishing payment to Walker.

4    Mot. at 2–10. As I agree with Ford's first argument, I will not reach the other two at this time.

5            A.       **Attorney's Fees and Litigation Costs**

6            Courts customarily follow the "American rule," which does not allow the recovery of

7    attorney's fees unless specified by statute. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421

8    U.S. 240, 245 (1975). Federal courts apply state law when determining breach of contract claims

9    and attorney's fees. *Matter of Sparkman*, 703 F.2d 1097, 1099 (9th Cir. 1983). California law

10   dictates, "in the absence of a special statute or a contractual provision for attorney's fees, the

11   prevailing party is not entitled to recover attorney's fees from his opponent." *Olson v. Arnett*, 113

12   Cal. App. 3d 59, 67 (Ct. App. 1980).

13           In support of his contention that attorneys' fees are recoverable here—in the absence of a

14   statute or contractual provision—Walker attempts to distinguish between the fees "incur[red] in

15   prosecuting this breach of contract action" with those "incurred due to Ford's breach of the

16   agreement in the underlaying [sic] action."[4] Pl.'s Response at 9. Ford cites to three California

17   cases—*Olson*, *Navallier*, and *MacCharles*—"that all reject[] the notion that a party may claim

18   attorney's fees and costs as 'damages' for being forced to litigate." Reply at 3 (citing *Olson v.*

19   *Arnett*, 113 Cal. App. 3d 59 (1981); *Navellier v. Sletten*, 106 Cal. App. 4th 763 (2003);

20   *MacCharles v. Bilson*, 186 Cal. App. 3d 954 (1986)). As Ford points out, "Walker [does not] even

21   mention, let alone distinguish, the dispositive cases… ." *Id.*

22           As in *Olson v. Arnett*, Walker and Ford continued to litigate after an agreement had been

23   reached because they disputed the existence of a condition precedent to settlement. 113 Cal. App.

24   3d at 65. In *Olson*, the matter proceeded to trial, the jury found for the party claiming there was

25   no condition precedent, awarded damages, and the trial court ordered recovery "for attorneys' fees

26

27   ─────────────────────
     [4] During the hearing, he also seemed to draw a distinction between fees incurred in enforcing the
28   settlement agreement, and those incurred in preparation for the underlying trial. The difference is
     immaterial.

*United States District Court*
*Northern District of California*

and costs, which damages were necessarily incurred in defending against the underlying action for personal injuries and prosecuting the cross-complaint subsequent to the breach of said settlement agreement." *Id*. at 64 (quoting trial court judgment).  The court of appeal reversed, holding that "the trial court erred in awarding respondents attorney's fees as damages." *Id*.  The *Navellier* court took *Olson*'s reasoning one step further in finding that costs are also not recoverable for breach of contract in the absence of a specific provision.  *Navellier v. Sletten*, 106 Cal. App. 4th 763, 777 (2003).

Walker presents the same argument as the respondents in *Olson*: "when [Ford] repudiated the settlement, [Walker was] forced to continue to employ attorneys and that therefore [his] attorney fees logically flow as damages from the breach." *Id*. (citing Civ. Code § 3300).  In attempting to distinguish the scenarios, he mistakenly associates his right to attorneys' fees as contingent on the *case* and not the *cause of action*.  *See* Pl.'s Response at 9 ("Plaintiff is not claiming that he is entitled to the attorneys [sic] fees he will incur in prosecuting this breach of contract action.  Rather, he is claiming the attorneys [sic] fees that were incurred due to Ford's breach of the agreement in the underlaying [sic] action.").  But "[t]he instant case is based on a contract, the agreement to settle the underlying action[,]" *Olson*, 113 Cal. App. 3d at 67, and fees expended towards this action and the underlying action stem from the same alleged breach of the settlement agreement.  As the *Olson* court found, "this case is not basically different from any other contract action where the nonbreaching party is forced to employ an attorney to enforce the contract but is not entitled to his attorney's fees as damages." *Id*. at 68.  Walker has not pointed to a contractual provision allowing him to recover fees and costs expended in enforcing the contract, and he cites no authority permitting such recovery as damages for a breach of contract claim.  Accordingly, he cannot seek those damages for an alleged breach of contract.[5]

---

[5] Ford also argues that attorneys' fees cannot be added to meet the amount in controversy requirement here because the section 998 offer explicitly excluded recovery for costs and attorneys' fees.  Mot. at 9.  Walker counters that the offer and acceptance could only have captured the intent of the parties at the time, and so the exclusion only refers to costs and attorneys' fees incurred at the time of settlement, but not "post-breach" costs and fees.  Pl.'s Response at 8–9.  While I agree, it does not alter my conclusion that Walker cannot allege those "post-breach" costs and fees as breach of contract damages.

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.      Emotional Distress**

Walker also requests damages for emotional distress.  Compl. at 7.   Under California law, emotional distress damages are not recoverable for breach of contract claims.  *Erlich v. Menezes*, 21 Cal. 4th 543, 558 (1999).   But Walker argues that recovery should be allowed here under the exception to the general rule, "where the breach is of such a kind that serious emotional disturbance was a particularly likely result."  Pl.'s Response at 10 (quoting *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1601 (2012)(internal quotation marks and citation omitted)).  "Thus, when the express object of the contract is the mental and emotional well-being of one of the contracting parties, the breach of the contract may give rise to damages for mental suffering or emotional distress."  *Plotnik*, 208 Cal. App. 4th at 1602.

As Ford argues, *Plotnick* is easily distinguishable because the parties there included an express provision aimed at the emotional well-being of the contracting parties.  Mot. at 7.  Not so here.  Moreover, "Walker completely ignores *Navellier* and *MacCharles*—cases specifically rejecting damages for emotional distress arising out of litigation… ."  *Id.*  "It has always been understood in our system that attorney's fees and the mental stress of litigation are burdens which the parties must ordinarily bear themselves."  *MacCharles v. Bilson*, 186 Cal. App. 3d 954, 958 (Ct. App. 1986); *see also Navellier*, 106 Cal. App. 4th at 777 ("[D]amages for mental suffering and emotional distress are generally not recoverable in an action for breach of an ordinary commercial contract in California.").  Walker fails to offer a convincing reason why he should be permitted to allege emotional distress damages for his breach of contract claim.

In the absence of any allowable damages—a necessary element for a breach of contract claim—Walker has not alleged a plausible claim for relief.  *Navellier*, 106 Cal. App. 4th at 776.

1

**CONCLUSION**

2          Walker has failed to state a claim for breach of contract.  Ford's motion is GRANTED.

3    Walker's complaint is DISMISSED WITH LEAVE TO AMEND within 21 days.

4          **IT IS SO ORDERED.**

5    Dated: March 13, 2017

6



7                                                    William H. Orrick
                                                     United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California